Citation Nr: 1132140 
Decision Date: 08/31/11 Archive Date: 09/07/11

DOCKET NO. 08-03 156 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUE

Entitlement to a compensable evaluation for sarcoidosis.


REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans Affairs


ATTORNEY FOR THE BOARD

K. Marenna, Associate Counsel



INTRODUCTION

The appellant had active service from July 1979 to June 1989.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin.

This case was previously before the Board in February 2010 and remanded for additional development. For the reasons discussed below, the Board finds that the RO substantially complied with the mandates of the February 2010 remand and will proceed to adjudicate the appeal. See Dyment v. West, 13 Vet. App. 141 (1999) (noting that a remand is not required under Stegall v. West, 11 Vet. App. 268 (1998) where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). 


FINDING OF FACT

There has been no demonstration, by competent clinical, nor competent and credible lay, evidence of record that the appellant's sarcoidosis is manifested by pulmonary involvement with persistent symptoms requiring chronic low dose (maintenance) or intermittent corticosteroids, and there has been no demonstration, by competent clinical, nor competent and credible lay, evidence of record that the appellant's pulmonary obstruction and shortness of breath are related to her service-connected sarcoidosis. 


CONCLUSION OF LAW

Throughout the rating period on appeal, the criteria for the entitlement to a compensable rating for sarcoidosis have not been met. 38 U.S.C.A. §§ 1155, 5100, 5102, 5103, 5103A, 5107 (West 2002); 38 C.F.R. § 4.97, Diagnostic Codes 6600, 6846 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the appellant's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, each piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. Veterans Claims Assistance Act (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions as to the appellant's claim. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2010).


Duty to Notify

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010). The United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002).

The Court observed that a claim of entitlement to service connection consists of five elements, of which notice must be provided prior to the initial adjudication: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490 (2006); see also 38 U.S.C.A. § 5103(a). 

Prior to initial adjudication of the appellant's claim, VA issued a letter dated in April 2006 which did not fully satisfy the duty to notify provisions, including notice of the degree of disability. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1); Quartuccio, 16 Vet. App. at 187; Dingess/Hartman, 19 Vet. App. at 490. The Veteran was not prejudiced by the VCAA notice defect as the record reflects that he had actual notice of the rating criteria. A statement of the case, issued in November 2007, set forth the relevant rating criteria. The Court observes the Court's holding in Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008), which focuses on VCAA notice requirements in an increased rating case. However, the case was recently overturned in part by the Federal Circuit. See Vazquez-Flores v. Shinseki, 580 F. 3d 1270 (Fed. Cir. 2009). Hence, it need not be further discussed in this decision. 


Duty to Assist

The Board concludes VA's duty to assist has been satisfied. The appellant's service treatment records and VA medical records are in the file. In an April 2010 letter, the Agency of Original Jurisdiction (AOJ) asked the appellant to furnish the names, address and dates of treatment of all medical providers from whom she has received treatment for sarcoidosis, as requested in the February 2010 Board remand. In a May 2010 statement, the appellant reported that she had only been treated at the VA Medical Center in Milwaukee, Wisconsin, since being discharged from the military. The appellant's VA treatment records from June 2009 to February 2011 have been associated with the claims file. Thus, the Board finds there has been substantial compliance with the February 2010 Board remand. See Dyment, 13 Vet. App. at 146-147; Stegall, 11 Vet. App. at 271. The appellant has at no time referenced outstanding records that she wanted VA to obtain or that she felt were relevant to the claim.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the appellant. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the appellant's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2010).

The RO provided the appellant with appropriate VA examinations in June 2006, May 2009, and January 2011. The examinations are adequate because they are based on a thorough examination, a description of the Veteran's pertinent medical history, a complete review of the claims folder and appropriate diagnostic tests, including a pulmonary function test (PFT) at the April 2011 VA examination. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). The Board notes that the June 2006 and May 2009 pulmonary function tests were not adequate because the VA examiners noted that the tests was unacceptable according to the criteria established by the American Thoracic Society. However, the other findings in the June 2006 and May 2009 VA examinations were adequate. 

The appellant has not reported receiving any recent treatment specifically for this condition, and there are no records suggesting an increase in disability has occurred as compared to the prior VA examination findings. There is no objective evidence indicating that there has been a material change in the severity of the appellant's service-connected disorder since she was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. The June 2006, May 2009, and January 2011 VA examination reports are thorough and supported by VA treatment records and provided findings pertinent to the rating criteria. The Board notes that although the June 2006 and May 2009 VA examination reports did not address whether the appellant's pulmonary/respiratory symptomatology was related to her sarcoidosis, the January 2011 VA examiner addressed this issue and the examinations otherwise contain adequate findings. The examinations in this case are adequate upon which to base a decision.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).

II. Legal Criteria

Ratings Generally

Disability evaluations are determined by comparing a veteran's present symptomatology with the criteria set forth in the Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. 4.1 (2010). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the appellant. 38 C.F.R. § 4.3. 

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential in determining the level of current impairment that the disability is considered in the context of the entire recorded history. 38 C.F.R. § 4.1. Nevertheless, where, as here, the appellant is appealing the rating for an already established service-connected condition, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

Sarcoidosis

Under 38 C.F.R. § 4.97, DC 6846 (sarcoidosis) a noncompensable evaluation is warranted for chronic hilar adenopathy or stable lung infiltrates without symptoms of physiologic impairment. Where there is pulmonary involvement with persistent symptoms requiring chronic low dose (maintenance) or intermittent corticosteroids a 30 percent evaluation is assigned. Pulmonary involvement requiring systemic high dose (therapeutic) corticosteroids for control warrants a 60 percent evaluation. A 100 percent evaluation is assigned for cor pulmonale, or cardiac involvement with congestive heart failure, or, progressive pulmonary disease with fever, night sweats, and weight loss despite treatment. Active disease or residuals are to be rated as chronic bronchitis (DC 6600) and extra-pulmonary involvement under specific body system involved. 

Since active sarcoidosis or residuals of sarcoidosis may be evaluated as chronic bronchitis, DC 6600 is also relevant to evaluating the appellant's disability. Under 38 C.F.R. § 4.97, DC 6600 (chronic bronchitis) a 10 percent evaluation is assigned for forced expiratory volume in one second (FEV-1) of 71 to 80 percent predicted value, or, the ratio of FEV-1 to forced vital capacity (FVC) of 71 to 80 percent or, diffusion capacity of the lung for carbon monoxide by the single breath method (DLCO (SB)) 66 to 80 percent predicted. A 30 percent evaluation is assigned for FEV-1 of 56 to 70 percent predicted, or FEV-1/FVC of 56 to 70 percent, or DLCO (SB) 56 to 65 percent predicted. A 60 percent evaluation is assigned for FEV-1 of 40 to 55 percent predicted, or FEV-1/FVC of 40 to 55 percent, or, DLCO (SB) of 40 to 55 percent predicted, or, maximum oxygen consumption of 15 to 20 ml/kg/min (with cardio respiratory limit). A 100 percent evaluation is assigned for FEV-1 less than 40 percent of predicted value, or, FEV-1/FVC less than 40 percent, or, DLCO (SB) less than 40 percent predicted, or, maximum exercise capacity less than 15 ml/kg/min oxygen consumption (wit cardiac or respiratory limitation), or, cor pulmonale (right heart failure) or, right ventricular hypertrophy, or, pulmonary hypertension (shown by Echo or cardiac catheterization), or, episode(s) of acute respiratory failure, or, requires outpatient oxygen therapy. 

III. Analysis

The appellant's claim for an increased evaluation was received on March 9, 2006. As such, the rating period on appeal is March 8, 2005. 38 C.F.R. § 3.400(o)(2) (2010).

A March 2005 VA treatment record notes that the appellant had dyspnea on exertion and sarcoidosis. The appellant presented with complaints of chronic, variable dyspnea on exertion, a chronic dry cough, some atypical chest pain and recent upper respiratory infection a week ago which the appellant said was improving. The appellant's medications included Albuterol. On physical examination the appellant was obese and in no acute distress. There was some left side cervical lymphadenopathy (old per the appellant since diagnosis of sarcoidosis was made and is much smaller in size). There was a crowded oropharynx. The cardiovascular system was normal. Lungs were clear with no crackles. A CT scan showed calcified granulomas and lymphadenopathy and no active interstitial process. A pulmonary function test revealed pre-bronchodilator results of FVC that was 46 percent of predicted, FEV-1 that was 46 percent of predicted, FEV/FVC that was 100 percent, and FEF25-75 percent that was 29 percent predicted. The test showed post-bronchodilator results of FVC that was 46 percent of predicted, FEV-1 that was 52 percent of predicted, FEV-1/FVC of 112 percent, and FEF25-75 percent that was 46 percent of predicted. Pulse oximetry at rest on room air was 97%. The physician found that the appellant's dyspnea on exertion was unlikely to be related to active sarcoidosis based on her imaging. Deconditioning was suspected as the main cause. However, the physician noted that they did not see any cardiac studies to rule out coronary artery disease as a cause. Regarding sarcoidosis, the appellant refused any future treatment based on her past experience with steroids, and the physician noted that he did not feel that her current symptoms were explained by sarcoidosis alone. Lifestyle modifications of weight loss and exercise were recommended, if cardiac causes were ruled out completely. In an addendum, a pulmonary staff physician noted that the appellant's PFT results were consistent with obesity, with restriction. Her CT scan of the chest showed no parenchymal disease. In spite of having had skin involvement, the appellant had escaped progressive lung disease and had an excellent prognosis. The physician noted that the appellant was resistant to the idea of a walking program for conditioning and weight loss, but this held the best likelihood of benefiting her. 

At the June 2006 VA examination, the appellant reported that she had a rare productive cough. Her sputum was yellow in color. She did not have any hemoptysis or anorexia. She stated that she had dyspnea on exertion after walking one to two blocks on a flat surface or after climbing one flight of stairs. She frequently experienced shortness of breath at rest. She stated that she also got shortness of breath when she lay on her back. She used an Albuterol inhaler, two puffs, four times per day on an as-needed basis. She stated that she mainly used her Albuterol when the weather was humid. She otherwise did not require any maintenance inhaler therapy. She had not required oxygen therapy. The appellant had not had any periods of incapacitation. The VA examiner noted that when the appellant was seen in the pulmonary clinic in March 2005, she was felt to have pulmonary function testing which was consistent with obesity with a restriction. Her prognosis from her sarcoidosis was felt to be excellent at that time. She had complained of dissimilar dyspnea on exertion at that time and this was felt to be unrelated to sarcoidosis and felt more likely to be secondary to deconditioning and obesity. 

On physical examination in June 2006, the appellant's breathing was nonlabored. Her heart had a regular rate and rhythm without murmurs or rubs. Her lungs were clear to auscultation bilaterally with no crackles, rhonchi, or wheezes. A CT scan of her chest dated in February 2005 showed no mediastinal or hilar lymphadenopathy. Small calcified subcarinal and hilar nodes were seen. There were scattered punctate calcified granulomas. The VA examiner noted that a pulmonary function test dated in June 2006 was felt to be unacceptable according to the criteria established by the American Thoracic Society due to excessive variability, variable effort, and no plateau. Her reported FEV1 was 50%, FVC 47%, FEV1/FVC 105%. Pulse oximetry on room air at rest was 97%. The impression was sarcoidosis. The VA examiner noted that the appellant's sarcoidosis appeared to be quiescent at that time. Her most recent CT scan of the chest did not show any parenchymal disease and she was felt to have an excellent prognosis by her pulmonologist in March 2005. The VA examiner noted that she reported significant dyspnea on exertion and at rest, which was previously felt to be due to obesity and deconditioning by her pulmonologist at the VA. A June 2006 X-ray report of the chest found that there was no radiographic evidence to suggest acute pulmonary disease. 

A June 2006 VA psychiatry treatment record notes that the appellant reported that she would not take steroids for her sarcoidosis. She stated that she got very irritable and labile when she took steroids. 

A July 2006 pulmonary function test reflects that spriometry suggested a mixed obstructive and restrictive ventilatory defect. Lung volumes as performed by helium dilution revealed severe restrictive ventilatory defect. Diffusion capacity revealed a severe diffusion bloc and therefore the presence of severe mismatching of ventilation and perfusion. 

A May 2007 chest X-ray report indicated there was no right or left lung infiltrate or focal mass lesion. There was no cardiomegaly. The right and left diaphragmatic cupola were preserved. The bony thoracic cage was intact. There was no right or left pleural collection. The impression was no acute pulmonary disease. A June 2007 chest X-ray report reflects that no mediastinal or hilar lymph nodes were seen and few punctate calcified lymph nodes were noted. There were scattered punctate calcified granulomas, unchanged. Otherwise, the lungs were clear without findings to suggest sarcoidosis. There was no pleural or pericardial effusion. A June 2007 VA treatment record notes that it is unclear as to the etiology of the appellant's dyspnea at this point. The pain did not appear to be suggestive of cardiac pain and a stress test was negative. The appellant was advised to lose weight. A chest X-ray and CT scan of the chest were normal. 

An August 2007 VA treatment record notes that the appellant reported that she had the same exertional chest pain and dyspnea for the last dozen years. The physician noted that a CT scan showed normal lung parenchyma and pulmonary function tests showed very poorly reproducible effort and suggested restriction which could be due to obesity. The physician stated that her lungs were clear, and she complained of pain with pressure on the costochondral joints. The appellant was instructed to walk a mile daily. 

A September 2007 VA treatment record reflects that the appellant reported chest pain and shortness of breath. Her heart rate and blood pressure response were appropriate for exercise and no dysrhythmias were noted. The VA physician noted that the appellant's exercise capacity was low for her age group. A November 2007 VA treatment record indicates that the appellant reported that she had some substernal chest pain described as "flashing," sometimes radiating from her left shoulder. The assessment was atypical chest pain with a normal stress test. Another November 2007 VA treatment record notes that there were no appreciable ocular manifestations of sarcoidosis at that time.

A December 2008 VA treatment record indicates that the appellant denied having chest pain, pressure or tightness. She also denied having dyspnea, diaphoresis, nausea and vomiting, or abdominal pain. She reported that she had palpitations off and on in November 2008 which occur less than one a month. She reported sharp chest pain in midepigastric and left sided chest pain into left axilla. The pain lasted less than three minutes. She denied cough or sputum production. She reported that the weather affects dyspnea. She denied dysphagia and dysphasia. The appellant still took Albuterol with instructions to inhale four times a day as needed. 

The appellant was seen for a VA examination in May 2009 to evaluate her sarcoidosis. The appellant reported that she has had a persistence of symptoms, specifically that she has gotten out of breath reading stories aloud and singing in church since the 1980s. She noted that she had chest pain which has not gotten any better since June 2006. She noted that she was short of breath walking in from the parking lot. The appellant also reported that she has a cough that comes and goes. The appellant reported that she did not utilize oxygen. She did not report any incapacitation. She utilized Albuterol five out of seven days up to three or four times per day. The appellant's frequency of chest pain was several episodes per month lasting anywhere from minutes to days. On physical examination, the appellant's respiratory rate was 18. She had shallow inspirations when lungs were auscultated. She had decreased breath sounds at the base likely due to incomplete inspiration. There was no evidence of cor pulmonale, right ventricular hypertrophy, or pulmonary hypertension. A June 2009 note indicates that the spirometry was not acceptable as per the criteria set forth by the American Thoracic Society, but suggested a mixed obstructive and restrictive ventilatory defect. Resting pulse oximetry on room air was normal. FEVC was 53% of predicted, FEV1 was 36% of predicted, and FVC/FEV1 ratio was 68%. The VA examiner noted that the appellant did not have any medical documentation to support her subjective complaints that her symptoms have worsened since her last VA examination. The VA examiner noted that the May 2007 chest X-ray showed there was no acute pulmonary disease and no interval change since the June 2006 study. 

In May 2009, the appellant was also seen for a VA examination to evaluate her skin. The report noted that the appellant reported that she had a biopsy by a dermatologist in the 1980s that revealed sarcoidosis. The examiner noted that the appellant's skin was minimally involved and the primary focuses of involvement were the lung and lymph nodes. After she was treated with prednisone, the skin lesions disappeared. On examination, there was no cutaneous evidence for sarcoidosis on the face or in any scars. The assessment was lichen sclerosis, which the VA examiner noted had no relationship to sarcoidosis. The VA examiner stated that it is a common autoimmune condition. The VA examiner also noted that the appellant had probable alopecia areata, now mostly in remission, which was also an autoimmune condition. The VA examiner stated that the appellant had a history of sarcoidosis with no skin lesions apparent at that time, in remission. The VA examiner opined that it is not likely that the appellant's hair loss and acne over the years relate at all to her service-connected sarcoidosis. The VA examiner noted that sarcoidosis is a mysterious condition, but is not known to predict or occur more frequently with autoimmune disease. The VA examiner stated that he did not believe that the sarcoidosis or treatment thereof, caused or permanently aggravated her hair loss, acne or lichen sclerosis. 

Following the February 2010 Board remand, the appellant was seen for another VA examination in January 2011 to evaluate her service-connected sarcoidosis. The VA examiner noted that the claims file was reviewed. The report noted that there had been no treatment with prednisone in approximately 12 years. The appellant complained of marked shortness of breath, even with just talking. She could only walk three blocks before she had to stop and catch her breath. She reported occasional sharp chest pain associated with shortness of breath, but no diaphoresis or nausea. The VA examiner noted that there had been no diagnosis of coronary artery disease and there was no evidence of pulmonary hypertension or mitral or tricuspid abnormalities. The appellant had not had any problems with known hepatomegaly or dependent edema. The appellant did not need oxygen therapy. The appellant reported that she did not have much of a cough. The only medication she took with regard to her condition was Albuterol, two puffs four times a day as needed for shortness of breath. On examination, the appellant's lungs were free of anomalies, wheezes or rhonchi. Breath sounds seemed somewhat diminished bilaterally in all lung fields, which seemed to be due to poor inspiratory effort. The heart was regular without a murmur, gallop or rub. There was no jugular venous distention, hepatomegaly, peripheral edema, clubbing or cyanosis. A Chest X-ray indicated the lungs were clear. The heart was normal in size and contour. The descending aorta was slightly tortous. Despite the history of sarcoid, there was no evidence of hilar or mediastinal lymphadenopathy. There was extremely minimal degenerative disease present in the thoracic spine. The impression was no acute disease in the chest. 

The appellant was evaluated with a pulmonary function test during the January 2011 VA examination. Lung volumes as performed by helium dilution revealed mild restrictive ventilatory defect. Diffusion capacity revealed a moderate diffusion block and therefore the presence of moderate mismatching of ventilation and perfusion. Resting pulse oximetry on room air was normal. Pre-bronchodilator results reflected a FEV-1 ratio of 53 percent, a FEV-1 to FVC ratio of 88 percent and DLCO of 52 percent. Post-bronchodilator results reflected a FEV-1 ratio of 57 percent, a FEV-1 to FVC ratio of 100 percent, and a DLCO of 52 percent. The appellant refused a Persantine nuclear stress test examination. An echochardiam report reflects that the left ventricle was normal in size with normal systolic function. There were no regional wall motion abnormalities. There was mild left ventricular hypertrophy. The right ventricle was normal in size with no normal systolic function. No significant valve disease was identified. There was inadequate tricuspid regurgitation to estimated pulmonary artery systolic pressure. 

The January 2011 VA examiner found that the appellant's sarcoidosis was in remission. He found that given the appellant's variability in her pulmonary function tests from year to year, even though there is a continued restrictive obstructive type pattern, and without evidence of pulmonary hypertension and a stable X-ray for a number of years, it is more likely than not that the abnormalities noted on pulmonary function tests, as well as the appellant's subjective complaint of shortness of breath, is due to a combination of obesity, deconditioning, and possibly some asthma. The Board finds the January 2011 VA examiner's opinion to be highly probative as he based the opinion on a review of the appellant's claims file, a physical examination, including pulmonary function tests and an echocardiogram report, and provided a rationale for the opinion.

In consideration of the evidence of record, the Board finds that a compensable evaluation is not warranted for service-connected sarcoidosis. In order to warrant a 30 percent evaluation under DC 6846, the appellant's respiratory disability must be productive of pulmonary involvement with persistent symptoms requiring chronic low dose or intermittent corticosteroids. A 60 percent rating requires pulmonary involvement requiring high dose (therapeutic) corticosteroids for control. As detailed herein above, the January 2011 VA examiner found that the appellant's sarcoidosis is inactive. Although as noted in the January 2011 VA examination, spirometry revealed a mixed obstructive and restrictive ventilatory defect and the appellant consistently report shortness of breath, the VA examiner found that it was due to a combination of obesity, deconditioning, and possibly some asthma. There is no indication that the appellant requires corticosteroids to treat symptoms associated with her sarcoidosis. The June 2006 VA psychiatry treatment record noted that the appellant reported that she would not take steroids for her sarcoidosis. The January 2011 VA examination report noted that the appellant had not taken prednisone for sarcoidosis in approximately twelve years. The evidence throughout the rating period on appeal reflects that the appellant took Albuterol for shortness of breath, which is not related to her sarcoidosis. Moreover, Albuterol is not a corticosteroid. Absent evidence that the appellant's respiratory disability requires corticosteroids a compensable rating is not warranted under 38 C.F.R. § 4.97, DC 6846. The Board also notes that there was no indication that the appellant had cor pulmonale, cardiac involvement with congestive heart failure, or progressive pulmonary disease with fever, night sweats, and weight loss despite treatments, which would warrant a 100 percent rating under Diagnostic Code 6846. 

As noted above, active or residuals of sarcoidosis are rated as chronic bronchitis under Diagnostic Code 6600 and extra-pulmonary involvement under the specific body system involved. The March 2005 pulmonary function test showed post-bronchodilator results of FVC that was 46 percent of predicted, FEV-1 that was 52 percent of predicted, FEV-1/FVC of 112 percent, and FEF25-75 percent that was 46 percent of predicted. The January 2011 pulmonary function test, post-bronchodilator, reflected a FEV-1 ratio of 57 percent, a FEV-1 to FVC ratio of 100 percent, and a DLCO of 52 percent. Under Diagnostic Code 6600, a rating of 60 percent is warranted for a FEV-1 ratio that is 40 to 55 percent predicted and a 30 percent rating is warranted for a FEV-1 ratio of 56 to 70 percent predicted. However, the Board finds that the appellant' service-connected sarcoidosis is not appropriately rated under Diagnostic Code 6600. The January 2011 VA examiner found the appellant's sarcoidosis was in remission, and therefore not active. He also found that the appellant's pulmonary obstruction and shortness of breath were more likely than not due to a combination of obesity, deconditioning and possibly some asthma. The March 2005 VA treatment record reflects that the physician found that the appellant's dyspnea on exertion was unlikely to be related to active sarcoidosis based on her imaging. Deconditioning was suspected as the main cause. In the addendum, a pulmonary staff physician noted that the appellant's PFT results were consistent with obesity, with restriction. The June 2006 VA examiner noted that the appellant's sarcoidosis appeared to be quiescent at that time. The June 2006 X-ray report of the chest found that there was no radiographic evidence to suggest acute pulmonary disease. Thus, the evidence of record reflects that the appellant did not have active sarcoidosis or residuals of sarcoidosis during the period on appeal. Consequently, although the appellant's PFT results at the January 2011 VA examination would warrant a higher rating under Diagnostic Code 6600, the appellant's service-connected sarcoidosis may not be rated under Diagnostic Code 6600 as chronic bronchitis. 

The May 2009 VA examination reflects that there was also no cutaneous evidence for sarcoidosis on the face or in any scars. The VA examiner found that the appellant had lichen sclerosis, which had no relationship to sarcoidosis. The VA examiner found that the appellant had a history of sarcoidosis with no skin lesions apparent at that time, in remission and opined that it is not likely that the appellant's hair loss and acne over the years relate at all to her service-connected sarcoidosis. The VA examiner also stated that he did not believe that the sarcoidosis or treatment thereof, caused or permanently aggravated her hair loss, acne or lichen sclerosis. The November 2007 VA treatment record noted that there were no appreciable ocular manifestations of sarcoidosis at that time. Thus, the evidence does not reflect that the appellant's service-connected sarcoidosis may be rated under another Diagnostic Code.

The appellant asserts that her chest pain and shortness of breath are related to her sarcoidosis. (See May 2010 statement). Although a lay person may be competent to report the symptoms of a disability, there is no indication the appellant has education, training or experience in evaluating the etiology of her chest pain and shortness of breath. Lay statements may be competent to support a claim for service connection where the events or the presence of disability, or symptoms of a disability are subject to lay observation. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). The January 2011 VA examiner found that the appellant's pulmonary obstruction and shortness of breath were due to a combination of obesity, deconditioning and possibly some asthma. The Board finds the January 2011 VA examiner's opinion to be more probative than the appellant's statements as the examiner has education, training and experience in evaluating sarcoidosis, based the opinion on a thorough examination and review of the appellant's claims folder, and provided a rationale for his opinion. The appellant has also contended that she has memory loss, blurred vision, swelling of feet, cramps in her joints, knees locking and frozen shoulders, as a result of sarcoidosis. (See August 2009 statement). However, as a lay person, the appellant is not competent to opine that the symptoms are related to her sarcoidosis. The appellant's symptoms have been evaluated at several VA examinations and the January 2011 VA examiner found that the appellant's sarcoidosis is in remission. 

The Board has also considered whether a referral for extraschedular rating is warranted. See Thun v. Peake, 22 Vet.App. 111, 115 (2008). Initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule; therefore, the assigned schedular evaluation is adequate, and no referral is required. See VAOPGCPREC 6-96; see also Fisher v. Principi, 4 Vet.App. 57, 60 (1993) (a threshold finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate is required for extraschedular consideration referral).

The evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected sarcoidosis is inadequate. A comparison between the level of severity and symptomatology of the appellant's sarcoidosis with the established criteria found in the rating schedule shows that the rating criteria reasonably describe the appellant's disability level and symptomatology. Further, the appellant has not alleged that the schedular evaluation is inadequate. Therefore, the available schedular evaluations for that service-connected disability are adequate. Referral for extraschedular consideration is not warranted. See VAOPGCPREC 6-96. Further inquiry into extraschedular consideration is moot. See Thun, 22 Vet.App. at 115.

TDIU is an element of all appeals for an increased evaluation. Rice v. Shinseki, 22 Vet. App. 447 (2010). In this case, however, TDIU consideration is not warranted. The appellant has not contended and the evidence does not indicate that the appellant is unemployable as a result of her sarcoidosis. A May 2009 VA psychological examination reflects that she worked at a local daycare. 

In summary, based on the evidence of record, the Board concludes that a compensable rating is not warranted for sarcoidosis. The Board has also considered whether a staged rating is appropriate for either disability at any time during the rating period on appeal. However, because the appellant's sarcoidosis has not been shown to have other than remained constant (at a noncompensable level) throughout the rating period on appeal, staged ratings are not warranted. Hart v. Mansfield, 21 Vet. App. 505 (2007). As discussed above, the evidence reflects that the appellant's sarcoidosis has been in remission during the period on appeal and the January 2011 VA examiner opined that her pulmonary symptoms are related to her obesity, deconditioning, and possibly asthma. Accordingly, the Board finds that the preponderance of the evidence is against the appellant's claim. Consequently, the benefit-of-the-doubt rule is not applicable, and the claim must be denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

ORDER

Entitlement to a compensable evaluation for sarcoidosis is denied.



____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs